**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Tiron Beane, | Civ. No. 15-205 (DWF/BRT) |
| Plaintiff, | |
| v. | |
| Hennepin County Jail; County of Hennepin; Officer Collins, Hennepin County Jail; Nurse who worked in Unit 5-E on 11/24/14 from 2 to 10 p.m.; Officer Collins' Supervisor or Superior; and Hennepin County Jail Officer who worked in Unit 5-E on 11/24/14 2 to 10 shift, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

BECKY R. THORSON, United States Magistrate Judge.

Tiron Beane, an inmate at the Minnesota Correctional Facility in Fairbault, has filed a civil rights complaint under 42 U.S.C. § 1983, alleging that prison officials violated his constitutional rights when they refused to provide him with antibacterial ointment for a cut on his "lower area" and, under threat of administrative segregation, ordered him to reveal that injury for examination. (*See* Doc. No. 1, Compl.) Beane did not pay the filing fee for this action, but instead submitted an application for leave to proceed *in forma pauperis* ("IFP"). (Doc. Nos. 2, 6.) On February 26, 2015, this Court ordered Beane to pay an initial partial filing fee of at least $19.09. (*See* Doc. Nos. 7, 9); 28 U.S.C. § 1915(b)(1). Beane has since paid the initial partial filing fee, and this case may now proceed to screening under 28 U.S.C. § 1915(e)(2).

Based on the information provided by Beane in his IFP application, the Court finds that he is financially eligible for IFP status. However, an IFP application will be denied, and the action will be summarily dismissed, when an IFP applicant has filed a complaint that fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Higgins v. Carter*, 258 F.3d 797, 800 (8th Cir. 2001) (explaining that § 1915(e)(2)(B) "allows a court to dismiss, prior to service of process and without leave to amend, an IFP action or appeal if it fails to state a claim on which relief may be granted"). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the sufficiency of a complaint, this Court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2009). That principle, however, does not extend to legal conclusions, including those couched as factual allegations, or to "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 566 U.S. at 678. And while *pro se* complaints are to be liberally construed, they must still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Beane's complaint arises from events that took place at the Hennepin County Jail on November 24, 2014. (*See* Doc. No. 1 at 2.) Beane alleges that he requested over-the-

counter antibacterial cream from Officer Collins, a guard at the jail, for a cut on his "lower area." (*Id.*) Despite such ointment being freely available to inmates, Collins initially refused Beane's request and insisted that Beane reveal the cut to him and a jail nurse. (*Id.*) Beane at first declined, as he did not want to expose himself to Officer Collins or the nurse and believed that being forced to do so violated jail policy, but Collins insisted that Beane reveal the cut if he wanted treatment. (*Id.*) Collins also allegedly threatened to place Beane in administrative segregation if he did not undergo the examination. (*Id.*) Beane grudgingly complied with Collins' orders, opening his jump suit and showing the cut to both Collins and the jail nurse. (*Id.*) The nurse opined that Beane did not need antibacterial ointment for the cut. (*Id.* at 3.) Beane later complained about Collins' conduct to an unnamed supervising officer, who stated that he would review the incident and, depending on the results of that investigation, have Beane submit a formal grievance. (*Id.*) Beane's complaint is unclear as to what exactly happened next; it seems that Beane initiated the jail grievance process but that no action was taken against Collins. (*Id.* at 4.)

   Based on these allegations, Beane asserts numerous constitutional claims against the Hennepin County Jail, Hennepin County, Officer Collins, the examining jail nurse, a guard who worked alongside Collins on the night in question, and the supervising officer with whom Beane spoke. (*See id.* at 1, 4.) Beane cites the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and generally references his rights to privacy, due process, equal protection, and freedom from cruel and unusual punishment, though the precise nature and basis of his constitutional claims is somewhat

3

opaque. (*See id.* at 1, 3, 5.) Nevertheless, fairly construing Beane's claims in light of both the facts alleged and established constitutional doctrine, this Court reads the complaint as asserting four types of claims. First, that the defendants' refusal to provide him with antibacterial cream for the cut on his lower area constituted deliberate indifference to his medical needs, in violation of the Eighth Amendment's ban on cruel and unusual punishment. (*See id.* at 4–5.) Second, that the asserted "strip search" performed by Officer Collins and the jail nurse violated both his Fourth and Eighth Amendment rights.[1] (*See id.* at 3–5.) Third, that Collins' threat to place him in administrative segregation if he did not reveal his cut for examination amounted to impermissible retaliation under the First Amendment. (*See id.* at 4–5.) Fourth and finally, that his due process rights were violated when Officer Collins' supervisor failed to investigate or take any action on his complaint of misconduct. (*See id.*) This Court will address each alleged constitutional violation in turn.

---

[1] To the extent Beane asserts that the alleged "strip search" and refusal to provide him with antibacterial cream violated his right to substantive due process, (*see* Doc. No. 1 at 4–5), that claim fails because those actions are covered by the Fourth Amendment's ban on unreasonable searches or the Eighth Amendment's ban on cruel and unusual punishment. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). In addition, while Beane appears to assert an equal protection claim for discrimination, (*see* Doc. No. 1 at 1, 5), his factual allegations do not show that he was treated differently from similarly-situated inmates based on a suspect classification, such as race or religion, or with respect to a fundamental right. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008).

## I. Eighth Amendment

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotations and ellipsis omitted). To state a viable Eighth Amendment claim concerning conditions of confinement, a plaintiff must demonstrate "(1) that the conditions were objectively sufficiently serious or caused an objectively serious injury to the plaintiff, and (2) that the defendants were deliberately indifferent, or acted with reckless disregard, to inmate constitutional rights, health, or safety." *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998). When applying the Eighth Amendment, it is important to bear in mind that "[not] every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny," and not "every malevolent touch by a prison guard . . . gives rise to a federal cause of action." *Id.* (quotations omitted).

Beane has failed to state a plausible claim that he was subjected to "the unnecessary and wanton infliction of pain" when jail officials refused to provide him with antibacterial cream for the alleged cut on his "lower area" and demanded that he open up his jumpsuit to reveal his injury for examination. To the extent that Beane is asserting an Eighth Amendment claim for deliberate indifference to a serious medical need, his unadorned references to a cut on his lower area are not sufficient to establish that he suffered from an "objectively serious medical need," one that "has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *See Laganiere v. Cnty. of Olmsted*, 772

F.3d 1114, 1116 (8th Cir. 2014) (quotation omitted). Furthermore, even assuming that Beane's injury could be construed as a serious medical need, the facts alleged in his complaint undercut any suggestion that the defendants, particularly Officer Collins and the examining nurse, deliberately disregarded that need. *See id.* ("A plaintiff claiming deliberate indifference must show an objectively serious medical need, and that the defendant actually knew of, but deliberately disregarded, such need.") (quotation omitted). According to Beane's own allegations, neither Officer Collins nor the jail nurse turned a blind eye to his complaints about his cut; instead, Collins summoned the nurse to examine Beane's injury and, after examining the cut, the nurse concluded in her professional opinion that Beane had no need for antibacterial cream. "A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (quotation and alterations omitted).

Any suggestion that the "strip search" conducted by Officer Collins and the examining nurse was sufficiently serious to constitute the unnecessary and wanton infliction of pain is equally unavailing. There is no indication that the search involved anything more than a brief visual inspection of Beane's lower area or that it resulted in an objectively serious injury, physical or psychological. *See Berryhill*, 137 F.3d at 1076 (holding that brief touching of an inmate's buttocks did not violate the Eighth Amendment where there was no indication that the incident involved undue force, that the plaintiff "suffered anything more than a brief unwanted touch on his buttocks," or that

6

the incident resulted in serious physical or psychological injury). Moreover, while Beane alleges that Officer Collins' demand to see the cut was motivated by malice and spite, the purported "strip search" was supported by a legitimate penological interest in assessing the nature and extent of Beane's asserted injury, not simply to harass, humiliate, or harm him. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (suggesting that the Eighth Amendment prohibits "calculated harassment unrelated to prison needs); *Bell v. Wolfish*, 441 U.S. 520, 539, 547 (1979) (explaining that "if a particular condition or restriction of [] detention is reasonably related to a legitimate governmental objection, it does not, without more, amount to 'punishment,' and that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates"); *Levine v. Roebuck*, 550 F.3d 684, 690 (8th Cir. 2008) (holding that forcibly catheterizing an inmate did not violate the Eighth Amendment where it was done "for the legitimate purpose of obtaining a urine sample for a random drug test" and not "maliciously and sadistically for the very purpose of causing harm") (quotation omitted).

## II. Fourth Amendment

Beane also alleges that the search conducted by Officer Collins and the jail nurse of his lower area violated his Fourth Amendment rights. The Eighth Circuit has held that "'prison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies,'" *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015) (quoting *Levine*, 550 F.3d at 687 (8th Cir. 2008)), though they do "not possess the full range of freedoms of unincarcerated individual[s]" because "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel," *Wolfish*,

441 U.S. at 546–47. *See also Goff v. Nix*, 803 F.2d 358, 365 (8th Cir. 1986) ("[A] prison inmate has a far lower expectation of privacy than do most other individuals in our society."). In the detention setting, "[t]he test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails," which, in turn, demands consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Wolfish*, 441 U.S. at 559. In each case, however, "the Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct." *Story*, 782 F.3d at 972 (quotation and brackets omitted).

Beane has not stated a plausible claim that the purported "search" conducted by Officer Collins and the jail nurse was unreasonable under the Fourth Amendment.[2] Beane had complained of an injury, and the search conducted by Officer Collins and the nurse was legitimately aimed towards assessing that injury. *See Wolfish*, 441 U.S. at 547 ("Prison officials must be free to take appropriate action to ensure the safety of inmates . .

---

[2] Although Beane alleges that the search violated jail policies, such policies do not give rise to a constitutionally protected right or affect the scope of Fourth Amendment protections. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) (explaining that whether a search or seizure is reasonable under the Fourth Amendment does not depend on state rules because such rules "do not alter the Fourth Amendment's protections," which do not "vary from place to place and from time to time"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1989) (holding that an arrest did not violate the Fourth Amendment, even though the arresting officer failed to follow police department guidelines, because such "guidelines do not create a constitutional right").

. ."). Nothing about Beane's description of the search indicates that it was performed in a particularly degrading, unhygienic, or abusive manner; indeed, the search appears to have been limited to a brief and non-intrusive visual inspection. *See Story*, 782 F.3d at 972–73 (explaining that "body-cavity searches should not be performed in a degrading, humiliating or abusive fashion," yet upholding a visual body-cavity search conducted in front of other inmates and which required an inmate to lift his genitals, bend over, and spread his buttocks); *see also Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007) (stating that "strip searches should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion"). Moreover, according to Beane's complaint, the search was conducted in the presence of only two individuals — Collins and the examining nurse.

Both the Supreme Court and the Eighth Circuit have upheld the constitutionality of inmate searches that were more intrusive than the brief visual inspection performed by Officer Collins and the jail nurse. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, — U.S. —, 132 S. Ct. 1510 (2012) (ruling that "correctional officials must be allowed to conduct an effective search during the intake process and that this will require at least some detainees to lift their genitals or cough in a squatting position"); *Wolfish*, 441 U.S. at 558 (upholding a prison policy requiring all inmates to expose various body cavities, including vaginal and anal cavities, for visual inspection as a part of a strip search conducted after every contact visit with an outside person); *Story*, 782 F.3d at 970–73 (upholding the constitutionality of a visual body-cavity search conducted in front of other inmates and which required the inmate to lift his genitals, bend over, and spread

his buttocks); *Goff*, 803 F.2d at 364–66 (upholding the constitutionality of anal cavity inspections for contraband because the legitimate government interest in ensuring the internal security of detention facilities outweighed the admittedly "unpleasant" intrusion of inmates personal rights). Under these circumstances, this Court cannot conclude that the search of Beane was unreasonable, even if everything alleged in his complaint proves to be true.

### III. First Amendment

Beane also suggests that Officer Collins violated his First Amendment rights by threatening to transfer him to administrative segregation if he refused to reveal his cut. "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quotation omitted). "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). Threats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in constitutionally protected conduct. *See Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013).

While Beane alleges that the search demanded by Officer Collins violated jail policy, he did not have a constitutionally protected right to forego that search. *See Moore*,

10

553 U.S. at 176 (explaining that state rules "do not alter the Fourth Amendment's protections," which do not "vary from place to place and from time to time"); *Phillips*, 320 F.3d at 847 ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *Edwards*, 863 F.2d at 608 (holding that an arrest did not violate the Fourth Amendment, even though the arresting officer failed to follow department guidelines, because such "guidelines do not create a constitutional right"). Thus, even assuming that Officer Collins' threat could chill a person of ordinary firmness from engaging in constitutionally protected activity, Beane was not engaged in such activity when he refused to submit to a search that, as previously explained, was permissible under the Fourth and Eighth Amendments. Nor was Collins' threat motivated by the exercise of constitutionally protected activity; instead, it was directed at Beane's constitutionally unprotected refusal to submit to an examination of his cut.[3]

### IV. Due Process

Finally, Beane suggests that he was deprived of due process when Officer Collins' supervisor failed to investigate or take any action on his complaint of misconduct. (*See*

---

[3] Notably, Beane does not allege that Collins threatened to place him in administrative segregation if he filed a prison grievance, which is constitutionally protected activity. *See Haynes v. Stephenson*, 588 F.3d 1152, 1155–56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); *see also Santiago*, 707 F.3d at 992 ("[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures to sustain a claim of First Amendment retaliation.") (quotation omitted). Beane only alleges that "Officer Collins told me if I don't show him the cut then he will put my 'ass' in the hole/segregation." (Doc. No. 1 at 2.)

Doc. No. 1 at 4–5.) To state a procedural due process claim, a plaintiff must demonstrate (1) the existence of a constitutionally protected liberty or property interest, and (2) that the defendant deprived him of that interest without constitutionally adequate process. *See Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011). Inmates do not have a constitutionally protected liberty in having their grievances properly investigated and acted upon. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that a failure to process prison grievances "is not actionable under section 1983" because a prison grievance procedure "does not confer any substantive right upon [] inmates" and, thus, "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment") (quotation omitted); *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (holding that "any alleged due process violation arising from the alleged failure to investigate [the inmate's] grievances is indisputably meritless" because he "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement . . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . .

but in making that choice the State does not create an independent substantive right."). Accordingly, Beane's due process claim necessarily fails.[4]

## V. Conclusion

For the foregoing reasons, this Court finds that Beane has failed to state a claim that the defendants' alleged actions violated his constitutional rights, including those guaranteed under the First, Fourth, Eighth, and Fourteenth Amendments. Accordingly, this Court recommends that his complaint be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Moreover, because the shortcomings of Beane's complaint have little to do with a failure to plead enough facts, and everything to do with the fact that the circumstances alleged simply do not rise to the level of a constitutional violation, this Court recommends that

---

[4] Beane's claims against Hennepin County, the Hennepin County Jail, and the unnamed guard who worked alongside Officer Collins on the night in question fail for additional reasons as well. To state an actionable civil rights claim, a plaintiff must allege facts showing that each defendant was personally involved in, or directly responsible for, the claimed constitutional violation. *See Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Beane's contention that the unnamed jail guard failed to stop the alleged misconduct of Officer Collins and the jail nurse does not amount to such personal or direct involvement. *See Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014) ("Section 1983 does not sanction tort by association."). Likewise, a municipality or county cannot be held vicariously liable under § 1983 for the actions of its employees, but only if a municipal policy or custom caused a constitutional violation. *See L.L. Nelson Enter., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 811 (8th Cir. 2012). Not only has Beane failed to show an underlying constitutional violation, but he has also failed to identify a municipal policy or custom that could support a claim against Hennepin County. And as to the Hennepin County Jail, "county jails are not legal entities amenable to suit." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003).

the dismissal be with prejudice and without leave to amend.[5] *See Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) (explaining that while leave to amend "should be freely given in order to promote justice," a party is "not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim").

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's complaint (Doc. No. 1) be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted;

2. Plaintiff's application to proceed *in forma pauperis* (Doc. Nos. 2, 6) be **DENIED**; and

3. Plaintiff's motion for subpoenas (Doc. No. 3) be **DENIED AS MOOT**.

---

[5] The Court notes that dismissal of this action for failure to state a claim for relief would count as a "strike" against Beane for purposes of 28 U.S.C. § 1915(g), which generally prohibits a prisoner from filing a civil action or appeal without full prepayment of the filing fee if he has had three previous actions or appeals dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted. The Court also notes that dismissal would not excuse Beane from having to pay the full amount of the statutory filing fee in this case. *See* 28 U.S.C. § 1915(b) (permitting payment of the filing fee in installments, but providing that "the prisoner shall be required to pay the full amount of the filing fee" if he "brings a civil action or files an appeal in forma pauperis").

Date: June 8, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).